EDWARDS
vs.
WOOLFOLK'S
ADM'R.

Case 39.

ORD. PET.

# Edwards vs. Woolfolk's Administrator.

### APPEAL FROM HOPKINS CIRCUIT.

1. In the case of slaves or personalty, the right of those in remainder are not barred by a possession adverse to the claim of the tenant of the particular estate during the continuance of the particular estate, as those in remainder are not entitled to possession until the termination of the particular estate. (5 *Litt.* 309; *Boone vs. Dyke's legatee,* 3 *Monroe,* 538.)

2. But it is otherwise as to real estate, where the remainder is contingent, where everything which bars or destroys the particular estate has a similar effect upon the remainder.

3. Where the legal title to slaves is vested in a trustee, to the use of one for life, with contingent remainder to others, the statute of limitations will run against the trustee; and if there be an adverse possession for five years, will bar the right of all. (*Hill on Trustees, side page* 504.)

4. Where a trustee hold the legal title in slaves, in fee, as well for the benefit of the particular estate as those in remainder, and the legal right is barred, both estates are affected; otherwise, where the legal estate is in the holder of the particular estate, in which latter case no limitation runs against the right of those in remainder until the particular estate is determined.

[The facts of the case are stated in the opinion of the court.—REP.]

*R. McKee* for appellant—

Upon the facts in this case the circuit court instructed the jury that the title of the negroes in controversy was in Henry Rudy's administrator, and that the statute of limitations commenced running from the sale to E. W. R. Woolfolk, and that the possession under that sale barred all right to recover under the deed of trust.

Appellants complain of this instruction, because under it they are barred of their right and title secured by the deed of trust, *before* any right of action accrued to them, and insist that the instruction is erroneous, and was given under a misconception of the

legal effect of the deed of trust, and of the estates thereby created.

The objects of the deed of trust was to secure the slave Sylvia, and her increase, to Mrs. Edwards during her life, free from the control of her husband, with remainder to her children living at her death. To secure the former, the legal title was vested in Henry Rudy, for and during the life of Mrs. Edwards. At her death, the woman, with her increase, were *to go to* the then living children of Mrs. Edwards. The title vested in Henry Rudy is limited by its object and purpose to an estate for the life of Mrs. Edwards, as well as by the terms of the deed. The terms, "at her death *to go to her then living* children," mean as well the slaves themselves as the title therein. Under this construction of the deed, which is deemed the only admissible one, the right of action of the children of Mrs. Edwards did not accrue till her death, consequently there was no bar to their title during her life, even though the right of Rudy, as trustee, might have been barred; and five years not having expired since her death before suit brought, the appellants were entitled to recover.

*J. Harlan* for appellee—

The circuit court, upon the motion of defendant's counsel, instructed the jury, that if they believed from the evidence that administration was granted on the estate of Henry Rudy five years before the commencement of this action, and that defendant had had five years' possession of the slaves, claiming them as the property of the estate he represented, before the bringing of this action, they should find for the defendant.

And this instruction presents the merits of the whole case. Woolfolk purchased the woman and children in 1835; and at that time, according to the terms of the deed, the legal title was in the administrator of Henry Rudy. The right of action was in him, and by permitting Woolfolk to hold the negroes

EDWARDS
*vs.*
WOOLFOLK'S
ADM'R.

for five years adversely to that right, the title vested in Woolfolk. Five years' adverse possession of a slave vests a complete title in the possessor. (*Stanley vs. Earl,* 5 *Litt.* 281; *Clark vs. Baker,* 7 *J. J. Marshall,* 194.)

There was no evidence on record in Henderson county of the manner these slaves were held. There was no evidence the parties to the deed lived in Jefferson county, where it was executed in 1825. The evidence rather conduces to a different conclusion.

Adverse possession of property against a trustee, in whom is vested the legal title, is as fatal as such possession against any other person. This is an action at law, tried by a jury, and to be governed by legal rules.

Pending the action, the administrator and heirs of Rudy, the trustee, were made plaintiffs in conjunction with the Edwards'. This was necessary, because the legal title was vested in Rudy, and upon his death it passed to his representatives.

October 15.

Judge SIMPSON delivered the opinion of the court:

This action was brought by the children and grandchildren of Elizabeth Edwards, deceased, against Woolfolk's administrator, to recover several slaves which he had in his possession.

The plaintiffs claimed title to the slaves, under a deed of trust, which purported to have been made in July, 1825, by John Edwards, James M. Edwards, and Lydia Edwards, to Henry Rudy; by which the grantors conveyed to the grantee a negro woman named Sylvia, in trust for the separate use of Elizabeth Edwards during her natural life, and at her death for the use and benefit of such children as she might then have living. The deed was executed by the trustee, and upon his acknowledgment, and the proof of its execution by two of the grantors, before the clerk of the Jefferson county court, it was admitted to record in his office on the next day after its date.

The slaves sued for are the descendants of Sylvia. The defendant claimed them as administrator, under a purchase from James M. Edwards, the husband of Elizabeth Edwards, the *cestui que trust* for life, made by his intestate, in August, 1835. He also relied upon the statute of limitations in bar of the plaintiff's claim.

It was proved that Henry Rudy, the trustee, died in 1834, and that administration on his estate was granted the same year. His heirs and administrator, were, during the pendency of the action, on the motion of the plaintiffs, made co-plaintiffs with them in their petition.

The circuit court instructed the jury that the statute of limitations was a bar to the plaintiffs' action, if they believed from the evidence that administration was granted on the estate of Henry Rudy, the trustee, five years before this action was commenced, and that the defendant and his intestate had the adverse possession of the slaves in contest, during the same period of time.

The defendant obtained a verdict and judgment in his favor, and the plaintiffs have appealed to this court.

It appeared upon the trial that Elizabeth Edwards, who was entitled to the beneficial use of the slaves during her life, died about four years before this action was commenced; consequently, the right of her children to the beneficial use of the slaves accrued within five years next preceding the bringing of their action.

The doctrine is well settled, that in the case of a vested remainder, the right of action cannot be taken from the person entitled in remainder, by a bar which commences and runs against the preceding particular estate. (*May's heirs vs. Hill*, 5 *Litt.*, 309.) The reason upon which this doctrine is founded is very obvious. The remainder man is not entitled to the possession of the property until the termination of the particular estate, and therefore, as he

*Margin note:*

EDWARDS
*vs.*
WOOLFOLK'S
ADM'R.

1. In the case of slaves or personalty, the right of those in remainder is not barred by a possession adverse to the claim of the tenant of the particular estate, as those in remain-

EDWARDS
vs.
WOOLFOLK'S
ADM'R.

der are not entitled to possession until the termination of the particular estate. (5 *Litt.* 309; *Boone vs. Dyke's legatee,* 3 *Monroe,* 538.)

2. But it is otherwise as to real estate, where the remainder is contingent—where everything which bars or destroys the particular estate has a similar effect upon the remainder.

3. Where the legal title to slaves is vested in a trustee, to the use of one for life, with contingent remainder to others, the statute of limitations will run against the trustee; and if there be an adverse possession for 5 years, will bar the right of all.— (*Hill on Trustees,* side page, 504.)

cannot sue for it during its continuance, he is not prejudiced by any adverse possession during that time.

It seems, however, that as to real estate, the rule is otherwise, in the case of a contingent remainder. There, every thing which bars or destroys the particular estate, has a similar effect upon the remainder; inasmuch as it depends upon the particular estate.

In this case the interest of the children of Elizabeth Edwards was clearly contingent. Only such of them as were living at the time of her death acquired an interest in the slaves, under the deed. Until that period arrived their right was contingent, inasmuch as, during her life, it could not be determined in whom the estate would vest.

But although a contingent remainder in land is defeated by a bar to the claim of the tenant of the particular estate, by the statute of limitations, it is otherwise as to chattels. An adverse possession of slaves, during the existence of the particular estate— no matter how long it may continue—will not bar the contingent remainder. (*Boone vs. Dyke's legatees,* 3 *Monroe,* 538.)

If, then, the persons entitled in remainder in this case had been invested with the legal title to the property, their right of action to the slaves sued for would not be affected by the adverse possession, during the continuance of the estate for life. But the legal title, if it passed under the deed, was in the trustee, and upon his death it vested in the administrator, who held it, not only for the benefit of the tenant for life, but also for the persons who might be entitled in remainder. By the terms of the deed the trust did not cease upon the termination of the life-estate, but was continued subsequently, and the estate in remainder was of the same character as the estate for life.

It is clear that the legal estate which is vested in a trustee, together with the equitable interest dependent upon it, may be defeated and divested by

EDWARDS
*vs.*
WOOLFOLK'S
ADM'R.

the statute of limitations, and this though the *cestui que trust* be an infant. (*Hill on Trustees, side page* 504; *Wych vs. The East India Company,* 3 *P. W.,* 310.)

The principle is, that the legal cause of action is in the trustee, and it is his duty to sue a stranger, who has obtained the possession of the trust property, and is holding it adversely; and the *cestui que trust* may require him to perform this duty; and upon his refusal, may bring an action in equity against the trustee and the person in the possession of the property, for its restoration to the custody of the trustee. For this reason, the equitable right is barred by the statute, whenever the legal right is barred.

But is the equitable right of those who are entitled in remainder, as well as that of the tenant for life, defeated in consequence of the right of action of the trustee being barred by the statute of limitations? The trustee holds the legal title in fee, as well for the benefit of the particular estate as the estate in remainder. When his legal right is barred both estates are thereby clearly affected, and it is difficult to perceive any ground upon which the estate in remainder can be withdrawn from the operation of the statute. A right of action exists in the trustee, for the benefit of both estates; and in this respect there is a clear distinction between a case of this kind, and that where the legal title to the estate is in the tenant for life, and also in the remainderman. In the latter case the cause of action does not accrue until the estate for life is determined. But in the former, it exists, not only in the trustee, but also in the holder of the equitable title in remainder, who may bring an action in equity to re-establish his right, from the first moment of the breach of trust, or as soon as the trust property has come into the hands of a stranger, who holds it in opposition to the trust. (*Andrew vs. Wrigby,* 4 *B. C. C.,* 125, *referred to in Lewin on Trusts and Trusteees, 24th volume Law Library, side page* 615.)

4. Where a trustee holds the legal title in slaves, in fee, as well for the benefit of the particular estate as those in remainder, and the legal right is barred, both estates are affected; otherwise, where the legal estate is in the holder of the particular estate, in which latter case no limitation runs against the right of those in remainder until the particular estate is determined.

EDWARDS
vs.
WOOLFOLK'S
ADM'R.

We are inclined to the opinion, therefore, that the right of action in this case, in the persons beneficially entitled in remainder, as well as in the person who held the legal title as trustee, was barred by the statute of limitations. But if we are mistaken in this conclusion, still the judgment for the defendants was proper, as the plaintiffs did not, upon the issue between the parties, establish their right to the slaves.

The defendant denied that the grantors in the deed of trust had any right or title to the slave, Sylvia, conveyed by them to the trustee; and also denied that the plaintiffs had any right or title to the slaves sued for. The plaintiffs failed to prove that the grantors in the deed had title, or that James M. Edwards, who sold the slaves to the defendants' intestate, acquired the possession of them under the deed, or ever held under it, or recognized its validity. The deed did not confer on him any right or title to the slaves, the trust therein declared being for the separate use of his wife. His vendee, therefore, had a right to claim in opposition to the deed, and his possession was adverse, both to the title of the trustee and the *cestui que trusts*. And there is no evidence that he held under the deed of trust, or had any knowledge of its existence. Consequently, the plaintiffs did not prove that they were invested by the deed of trust with any right or title whatever, to the slaves in controversy.

Wherefore, the judgment is affirmed.